PEREZ, Chief Justice
RULING ON DEFENDANT CLAY’S MOTION TO QUASH INDICTMENT
Defendant Clay, through counsel, on September 11,1974, filed a motion to quash the indictment. The motion was regularly set for hearing and argued on September 20, 1974, and was then accordingly submitted for ruling.
The first ground was based on an allegation that the entire testimony presented to the Grand Jury consisted solely of the admission and confession of co-defendant Reyes. A careful study of the records available to the court indicated that, of the witnesses listed in the indictment, at least one would be able ta testify to facts within his own personal knowledge.
On the basis of failure of defendant Clay to show that the indictment was in fact solely based on admission and confession of co-defendant Reyes, it is the opinion of this court that this ground is without merit.
The second ground is based on an allegation that defendant Clay was not given any opportunity to testify on his own behalf before the Grand Jury. This court is not aware of any case law, statute or rule requiring that a defendant, without making a request, be given the oppor *249 tunity to testify .before the Grand Jury. This ground, therefore, must likewise be denied.
• The third ground relied upon was that defendant Clay was not taken before a judge of the Superior Court of Guam immediately after filing of the indictment. The record shows that on August 8, 1974, defendant was brought before the court and properly informed and advised by the court of all of his rights in accordance with law. The third ground, therefore, is denied.
The fourth ground relied upon alleges “There is lacking the requisite statutory authority for use of a Grand Jury indictment in the Superior Court of Guam.” Lengthy argument was presented before this court on this particular ground. Counsel contends that since this Grand Jury was impaneled on June 28, 1974, and the impaneling court was the Island Court of Guam, this panel has no standing or authority to sit as a Grand Jury in the Superior Court which came into existence on July 1,1974.
For a proper resolution of this ground, it is necessary that we consider the Court Reorganization Act in its entirety rather than to refer to any particular section contained therein.
Section 3 of the act enacted Section 65 of the Code of Civil Procedure reading as follows:
Section 65. Pending appeals. All actions and proceedings arising under the laws of Guam pending in the Appellate Division of the District Court of Guam upon the effective date of this Act shall be prosecuted to final determination in that court as though this Act had not been passed. All appeals pending before the United States Court of Appeals for the Ninth Circuit shall remain in said court and the District Court of Guam shall retain jurisdiction to enter such orders, decrees and judgments and conduct any appropriate proceedings in accordance with the ultimate mandates issued on any such pending appeals.
The Legislature in Section 9 of the act enacted a new *250 Section 89.1 to the Code of Civil Procedure reading as follows:
Section 89.1. Pending cases. All actions and proceedings arising under the laws of Guam pending in the District Court of Guam upon the effective date of this Act, shall be prosecuted to final determination in that Court as though this Act had not been passed.
It is to be noted that nowhere in the act did the Legislature mention what shall be done or what shall happen with pending cases before the Island Court of Guam upon the effective date of the act.
The Legislature again in Section 3 of the act enacted Section 66 of the Code of Civil Procedure giving the Judicial Council authority to prescribe rules of procedure. The fourth paragraph of that section reads as follows:
All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect. Any such rules heretofore prescribed by the Judicial Council and reported to the Legislature shall remain in effect until modified or repealed.
The Legislature again in Section 4 of the act enacted Section 81 of the Code of Civil Procedure establishing the composition of the Superior Court and method by which judges of the Superior Court shall be appointed. The second paragraph of this section reads as follows:
In carrying out the provisions of Section 81 of the Code of Civil Procedure, as amended by the preceding section of this Act, the Chief Judge and judges of the Island Court will then assume the office of Presiding Judge and judges of the Superior Court, respectively, and the Judge of the Police Court will be the Judge of the Superior Court, assigned exclusively to the Traffic Court Division of the Superior Court for terms to expire upon the expiration of their present term of office.
Section 55 of the act reads as follows:
General references. Except where an act of the United States *251 Congress specifically vests jurisdiction of a cause in the District Court of Guam, every reference in law, rule or regulation to the original jurisdiction of the District Court of Guam, concerning a matter arising under the laws of Guam, shall be read and mean the Superior Court of Guam. Every reference to the Appellate Division of the District Court in law, rule or regulation shall be read and mean the Supreme Court of Guam. Every reference in law, rule or regulation to the Island Court shall be read and mean the Superior Court of Guam.
On reading and interpreting all of these sections together, it seems to this court that had the Legislature intended to abolish the Island Court and create an entirely new court, they would not have overlooked the rather obvious question of what shall happen to the then pending hundreds of cases, important cases, before the Island Court of Guam. Had they so intended, it would have been very simple for the Legislature to follow the provision they set out either in Section 65 of Section 89.1, changed a few wordings and provide that all cases pending in the then Island Court shall be transferred to the Superior Court of Guam.
In Section 81, relative to the appointment, tenure and salary of the judges, and referring particularly to the section quoted above, the Legislature simply said “that the Chief Judge of the Island Court will then assume the Office of Presiding Judge of the Superior Court, that the other judges of the Island Court will then assume the office of judges of the Superior Court”. From this wording of the act, it seems to the court that the formal swear-in-ceremony held on the 1st of July 1974, wherein the judges of the then Island Court were ostensibly sworn in as judges of the Superior Court was nothing but a window dressing for the purpose of giving formal notice to the general public that the Judicial Branch of Guam had finally reached a status of equality with the other two branches of our government.
*252 When the Legislature enacted Section 66 of the Code of Civil Procedure, and referring particularly to the words “any such rules heretofore prescribed by the Judicial Council and reported to the Legislature shall remain in effect until modified or repealed”, this court is of the opinion that the Legislature clearly and unequivocally designated the rules of Criminal Procedure of the Island Court that was prescribed by the Judicial Council, reported to the Legislature and was then in effect on the effective date of the act to remain and be the rules of criminal procedure for the Superior Court of Guam.
In addition to all of these, the committee on Judiciary, which studied the bill and held public hearings, on page 2 of its transmittal report to the floor of the Legislature said: “the bill would in effect establish the Island Court under a different name as the court of original and general jurisdiction in Guam.”
In view of all these, the court must conclude that the Superior Court of Guam was in fact a continuation of the Island Court of Guam under a different name with additional jurisdiction. Therefore, since the Island Court of Guam was properly vested with authority to impanel the Grand Jury and did so impanel this Grand Jury and since the Superior Court had not impaneled any Grand Jury, the Grand Jury that returned the indictment in this case was properly constituted, properly impaneled and was with authority and power to return an indictment in this case.
Reference was made to the charge to the Grand Jury made by the then assigned criminal judge of the then Island Court of Guam. This court had gone over the complete transcript taken of that charge and found nothing there that was improper. To the contrary, while some courts are not giving charge to the jury, this court is of the opinion *253 that in order to have an effective and informed Grand Jury, it is necessary for the judge impaneling the Grand Jury to advise the Grand Jury in general terms of the kind of cases that will come before them, of their responsibility, of their authority and so forth.
In 30 American Jurisprudence, 2nd, Page 966, under Section 19, we find: “Although in a technical legal sense, the grand jury may be considered charged when it is sworn, it is proper and usual for the court to instruct and advise the grand jurors as to their duties after they are sworn. Some statutes not only require the court to give such a charge, but also to impose on it the duty of including in the charge provisions of the law relating to certain offenses — ”
As to alleged rapport between the impaneling judge and the grand jury, in the case of State v. Easter, 30 Ohio St. 542, the court held “kinship to the victim of the crime being investigated .does not disqualify a person serving as a Grand Jury”..
The grounds raised in numbers 5, 6, and 7, all deal with the sufficiency of the .indictment as , to failure to plead sufficient facts, and that the indictment contains mere conclusions, and that the indictment is vague, indefinite and uncertain. This court is satisfied that the indictment is clear, concise, and sufficient.
On ground number 8, it is the hope of this court that counsel did not mean to urge that defendants shall be afforded the privilege of receiving notice of the time and place of the impaneling of a Grand Jury, nor does he intend to infer that each and every defendant shall have the right to attend the selection of the Grand Jury; otherwise, the court will find itself in an untenable position, since to hold to that view would require that the court must go over the entire procedure of selecting a Grand Jury from the very beginning to its completion before each and every person accused of crime can be indicted. Our experience had been *254 that it would take anywhere from a minimum of 30 days to a maximum of 60 days to impanel a grand jury. Certainly the territory of Guam cannot afford this luxury.
This court is satisfied that defendant has the right to object to the array or to the lack of legal qualifications of an individual juror. Such an objection was not raised on ground number eight.
It is the feeling of this court that rule 6(b)(1), wherein it says: “challenges shall be made before the administration of the oath to the jurors and shall be tried by the court”, simply urges or requires that objections to the array of panel be raised at the early stage of the proceeding. Wright v. U.S., 165 F.2d 405 (8th Cir. 1948).
On ground number 9, with reference to defendant Clay not being afforded the opportunity of insuring the presence of a stenographer to record the proceeding, this court is not aware of any such rights being given a defendant; neither is there any requirement that a stenographer be present to record the proceeding.
The motion to quash indictment, is, therefore, denied.